FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

00 APR 18 AM 9:00

U.S. DISTRICT COURT
N.D. OF ALABAMA

VERNANDEZ McCURDY,           )
                             )
        Plaintiff,           )
                             )        CIVIL ACTION NO.
v.                           )
                             )        99-AR-0216-S        ENTERED
CHATHAM STEEL CORPORATION,   )
                             )                            APR 18 2000
        Defendant.           )


### MEMORANDUM OPINION

Presently before the court is defendant's motion for summary judgment.  Plaintiff, Vernandez McCurdy ("McCurdy"), alleges that defendant Chatham Steel Corporation ("Chatham"), violated Title VII when it failed to promote him to various positions based on race and when it payed him less than other assistant foremen who are white.  McCurdy also alleges that Chatham subjected him to a racially hostile work environment and that it retaliated against him for filing a charge of discrimination with the E.E.O.C.  For the reasons set forth in the opinion below, the court will deny Chatham's motion as to McCurdy's promotion claims, but will grant its motion as to the remaining claims.

### Pertinent and Undisputed Facts

Chatham has been in operation in Birmingham, Alabama, since November 21, 1983, when it purchased A & A Steel Company.  The

26

Birmingham plant is primarily a wholesale distributor of steel of various types. Ray Clark ("Clark") is the Operations Manager. He is responsible for all shipping and receiving functions in the warehouse. He also supervises the Transportation Department and is Chatham's quality coordinator. Clark is responsible for filling vacancies in Receiving and Loading.

McCurdy was hired by Chatham on July 23, 1984. Since that time, McCurdy has held various positions within the company, including Saw Helper, Shear Helper, Equipment Operator I and II, and Assistant Foreman. From September 23, 1985, to August 18, 1990, McCurdy worked on the night shift. McCurdy was employed as the Assistant Foreman for Receiving on the day shift from August 18, 1990, through January 1999, at which time he was promoted to Receiving Foreman. He still holds that position.

As Assistant Foreman, McCurdy's duties included unloading unfinished steel, marking and identifying materials, storing the steel, and supervising employees who performed those tasks with him. Kenneth Dooley ("Dooley") was the Foreman in Receiving at that time, and McCurdy was required to assume Dooley's responsibilities in his absence. Those duties included ensuring that transfer loads were unloaded and stored and cross-checking steel received against the invoice to confirm delivery of the

2

materials.

On November 10, 1997, Clark officially promoted Russell Drummond ("Drummond") to the job of Inventory Control and Danny Benson ("Benson") to the position of Loading Foreman. At that time, Chatham did not have a formal job posting procedure.[1] Instead, Chatham's policy was that qualified current employees would be considered for vacancies before external applicants. Chatham's policy, effective from 01/01/96 until 03/01/98, stated the following:

> Employees should be encouraged to contact the supervisor and/or the Human Resources Department if they are interested in applying for a vacant position. If an employee is interested in a position, he/she will need to complete a new job application. The interviewing process should be scheduled by the individual filling the position.

Chatham Steel Corporation Supervisor's Manual regarding Employee Selection and Orientation.[2]

---

[1] Chatham adopted a formal posting procedure on March 1, 1998.

[2] There appears to be a dispute over whether an employee was **required** to fill out a new application and to notify his or her supervisor if he or she was interested in a job. Chatham's brief states that the Birmingham facility did **not** require current employees to complete a new application process but that it **did** require them to notify the Department Manager if they were interested in a job vacancy. This statement is directly contradictory to the language quoted above from the personnel policy. This dispute is not material to the summary judgment determination, but could become relevant at trial in relation to whether McCurdy was required to officially apply for the jobs and whether Chatham was required to consider him, regardless of whether he applied. See infra, n. 6.

McCurdy claims he told Clark that he was interested in these jobs at some point in November or December of 1997.

It is undisputed that when McCurdy was Assistant Foreman for Receiving on the day shift, he was paid less than Tim Hogland ("Hogland") and Danny Bagley ("Bagley"), who are white and who at different times were Assistant Foreman for Loading on the night shift. They were paid at least 65 cents more per hour than McCurdy.[3] In 1998, for example, Bagley earned $11.90 per hour while McCurdy earned $11.25 per hour.[4]

### Allegations of Racial Harassment

McCurdy alleges that the following racially harassing comments were made to him while he worked for Chatham:

- At some point between 1993 and 1996, someone in a crowd of people made the comment that "Black is beautiful, black is grand, but white is the color of the big boss man."

- McCurdy used to wear a colorful short set and as a result, his co-worker B.D. Little called him a "jungle boogy." This would

---

[3] McCurdy also alleges that he was paid less than John Cullwell, who is also white and who was employed as an Assistant Foreman for Loading on the night shift. McCurdy's attorney points out that she did not receive sufficient pay history on Cullwell to make a comparison. For the purposes of summary judgment, the court will assume that Cullwell was also paid more than McCurdy because he occupied the same position as Hogland and Bagley.

[4] Night shift employees are also paid an additional $1.00 per hour premium because the night shift is the least desirable time to work and results in high attrition.

have occurred in 1983 or 1984.

- Jack Butler ("Butler"), who at the time was a night-shift Loading Foreman, called McCurdy a "treetop lover." Butler also would call him a "watermelon-eating, seed-spitting, barefoot, country – something like that, you know." McCurdy says that Butler made these comments in the late 1980s. Chatham later fired Butler.

- David Blackwell ("Blackwell"), a co-worker, told him that one time his father kicked the T.V. out because a black man showed up on it and that he traded in his black truck for a white one because white is better than black.

- In late 1996, Drummond, a Crane Operator who reported to McCurdy, told him that before he met McCurdy, he'd have thought that all blacks were niggers. When McCurdy asked him why he said that, Drummond replied that blacks are cursed. McCurdy says that Drummond then walked over to Clark and asked him, "Aren't blacks cursed?" McCurdy says that Clark responded "Yes. Blacks are cursed."

- Finally, someone put a swastika on his locker. McCurdy does not know who did this and he did not show or report the swastika to anyone at Chatham.

5

McCurdy filed a charge of racial discrimination with the E.E.O.C. on January 7, 1998. He was promoted to Foreman of Receiving in January of 1999. Clark did not hire an Assistant Foreman in Receiving to replace McCurdy. McCurdy filed his complaint in this action on February 1, 1999.

### Summary Judgment Standard

Rule 56(c), F.R.Civ.P. provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has emphasized that this language means exactly what it says: there must be a _genuine_ issue of _material_ fact, not merely some factual dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986). What this standard means in practice is that "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S.Ct. at 2511 (citing First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575 (1968)).

On defendant's motion for summary judgment, the court must look at the evidence, construed in plaintiff's favor, to see if a

6

jury could return a verdict for plaintiff.  If so, defendant's motion for summary judgment must be denied.  If, however, as a matter of law, a jury could not return a verdict for plaintiff, defendant's motion must be granted.

## I.  Discrimination in Promotion

McCurdy alleges that he should have been promoted to the positions of straight line burner, pattern burner, loading foreman, and inventory control.  The Eleventh Circuit has made it clear that "In opposing a motion for summary judgment, 'a party may not rely on his pleadings to avoid judgment against him.' . . . Grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)(citations omitted). See also Harris v. Warehouse Services, Inc., 77 F. Supp. 2d 1240, 1248 (M.D. Ala. 1999)(citing Resolution Trust Corp. and holding same).

Here, McCurdy made no mention of the pattern burner and straight line burner positions in his brief in opposition to Chatham's motion for summary judgment.  Thus, the court will treat those claims, to the extent that they existed, as abandoned and

will address only the other two.[5]

Because the parties' arguments for the Loading Foreman and Inventory Control positions are the same, the court will address them together.

McCurdy argues that summary judgment is improper because he has offered direct evidence of discrimination.  As the Eleventh Circuit has held repeatedly, direct evidence is evidence which, if believed by the jury, proves the existence of a fact in issue without inference or presumption.  See <u>Burrell v. Board of Trustees of Georgia Military College</u>, 125 F.3d 1390, 1393 (11th Cir. 1997); <u>Earley v. Champion Intern. Corp.</u>, 907 F.2d 1077, 1081 (11th Cir. 1990); and <u>Carter v. City of Miami</u>, 870 F.2d 578, 582 (11th Cir. 1989).  The Eleventh Circuit has also explained, in accordance with Justice O'Connor's often cited concurrence in <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 109 S.Ct. 1775 (1989), that remarks by decisionmakers which are unrelated to the decision-making process itself are **not** direct evidence of discrimination.

McCurdy, however, cites <u>E.E.O.C. v. Alton Packaging Corp.</u>, 901 F.2d 920 (11th Cir. 1990), for the proposition that racial slurs by

---

[5] Regardless of whether plaintiff abandoned the claims, they are time barred because the decisions for those positions were made in 1995 or 1996, and plaintiff did not file his EEOC charge until 1998.

decisionmakers are direct evidence of discrimination.  However, what Alton actually held was that the statement by a decisionmaker that if it was his company, he wouldn't hire any black people was direct evidence.  In so holding, the Eleventh Circuit cited with approval Justice O'Connor's concurrence in which she stated,

> [S]tray remarks in the workplace . . . cannot justify requiring the employer to prove that its hiring decisions were based on legitimate criteria.  Nor can statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in that regard.

Price Waterhouse at 1804-1805.  Accordingly, Alton held that the statement referred to above was in fact a statement by a decisionmaker related to the decisional process itself.

However, the other remark at issue in Alton, which was a general racist remark, was held **not** to be direct evidence.  The court noted that the broad racist remark was the kind of "stray remark" to which Justice O'Connor was referring.  Thus, Alton does not stand for the broad proposition that any racial slur or remark made by a decisionmaker constitutes direct evidence of discrimination.

Accordingly, the statement that "all black are cursed" would not be direct evidence.  It was a statement allegedly made by the decisionmaker one year prior to any promotion decisions complained

of by McCurdy.  The statement is circumstantial evidence because one has to draw the inference that because the decisionmaker thinks that blacks are cursed, he likely would not hire blacks.  In sum, the statement alone does not prove the fact of discrimination without inference or presumption and is therefore not direct evidence.

Because the statement is circumstantial evidence, the McDonnell Douglas burden shifting framework applies.  In order to establish a prima facie case, McCurdy must show: (1) that he belongs to a protected class; (2) that he applied and was qualified for a job for which the employer was seeking qualified applicants; (3) that despite his qualifications, he was rejected; and (4) that after his rejection, the position remained open and the employer continued to seek applicants or in fact filled the position with someone outside plaintiff's protected class.  See Crawford v. Western Elec. Co., 614 F.2d 1300, 1315 (5th Cir. 1980).

Chatham argues that McCurdy cannot establish the last three elements of his prima facie case.  First, Chatham says that the promotion decisions were made in September or October of 1997, so if McCurdy did in fact express interest in November or December of 1997, it would have been too late.  In other words, there is no way that he could have "applied" for the positions because the

10

decisions had already been made.

However, the court finds that there is a dispute of fact as to exactly when the promotion decisions were made.  First of all, it is undisputed that Clark did not use any written selection criteria or job qualifications in filling those positions.  As a result, even after reading the parties' briefs and the relevant deposition testimony, it is not clear to this court exactly how and by what process Clark made the promotion decisions.  This makes it difficult to know, then, exactly when the decisions were made.

The only date which the court can pin down is November 10, 1997.  That's the date that Chatham admits the promotions became "official."  However, Chatham states that McCurdy should have known as early as July of 1997 that the position of Loading Foreman was available because that's when Steven Ellis ("Ellis") quit.  But the personnel form relating to that action indicates that, although Ellis' last day of work was July 10, 1997, he didn't officially resign until October 14, 1997.  Also, that same personnel form was not stamped "ENTERED" until October 20, 1997.  Thus, this evidence calls into question Chatham's claim that the loading foreman job was **actually available** in July as well as Clark's statement that he made the decision in September or October.  Since the decisions did not become final until November 10, 1997, it is possible that

11

McCurdy expressed an interest in the job before the decision was made, and thus there is a disputed issue of material fact.

As for the inventory control job, Clark claims that he also made that decision in September or October.  Chatham states that despite the fact that the promotion did not become effective until November 10, 1997, Drummond, the person promoted, began training for the job in mid-October.  Because the court has not been directed to any personnel documentation regarding this promotion, it can only conclude that the factual issue comes down to Clark's word against McCurdy's.  Obviously, the court cannot make credibility determinations at the summary judgment stage, and so it is a disputed material fact whether McCurdy applied for the Inventory Control position before the promotion decision was made.[6]

Next, Chatham disputes that McCurdy meets the second element of his prima facie case because it argues that he was not qualified

---

[6] Because the court has determined that there is a disputed issue of material fact with regard to whether McCurdy "applied" for the promotions, it need not address McCurdy's alternative argument that he is not required to have applied for the positions in order to establish his prima facie case. See Carmichael v. Birmingham Saw Works, 738 F.2d 1126 (11th Cir. 1984).  In Carmichael, the Eleventh Circuit held that where the employer does not give formal notice of a job's availability and thus uses informal methods to fill the position, "it has a duty to consider all those who might reasonably be interested [in the position], as well as those who have learned of the job opening and expressed an interest." Id. at 1133.  This issue may of course be raised at trial.  In fact, the court believes that this issue is more appropriately reserved for the jury because it involves a determination of whether Chatham reasonably should have considered McCurdy for the positions, regardless of whether he applied.

12

for the positions.  It points out that the Inventory Control job required careful attention to detail and that McCurdy did not possess this skill as evidenced by his failure to correctly perform routine paperwork when he filled in for Dooley as Foreman.  For example, Chatham claims that McCurdy did not adequately cross-check steel because he routinely failed to identify his count on the invoice and to stamp the paperwork as required by company procedure.  It also states that McCurdy lacked the ability to supervise employees and coordinate their work in a safe and efficient manner, skills which were prerequisites for the job.

McCurdy argues that there is no contemporaneous proof that Chatham considered his performance sub par in any way.  He points out that there is no record of sub par performance in his personnel file and that Clark admitted in his deposition that McCurdy's work history was spotless.  Also, Clark admitted that McCurdy adequately performed his regular duties as Assistant Foreman.  Furthermore, McCurdy received a merit raise in October of 1997 and was promoted to Foreman in January of 1999.  In sum, McCurdy has offered sufficient evidence from which a reasonable jury could conclude that he was qualified for the positions.

The undisputed facts establish the remaining elements of MCCurdy's prima facie case, so the next question is whether Chatham

has offered legitimate, non-discriminatory reasons for its promotion decisions.  Part of the analysis here is the same as the above analysis of whether McCurdy was qualified for the positions, because one of Chatham's reasons for why it did not hire McCurdy is that he was not qualified.  In addition, the alleged comment made by Clark that "Yes.  All blacks are cursed," is relevant circumstantial evidence of discrimination at this stage. Furthermore, McCurdy has offered evidence, such as the testimony of Michael Cox, which creates a disputed issue of material fact as to whether the persons selected for the promotions were qualified. Thus, the court finds that McCurdy has offered evidence, which if believed by a jury, would cast doubt on Chatham's legitimate, non-discriminatory reasons for the promotion decisions.  Therefore, the court will deny Chatham's motion as to McCurdy's promotion claims.

## II.  Racial Discrimination in Pay

McCurdy alleges that he has been paid less than other assistant foremen who are white.  The court agrees that the burden of proving a wage discrimination claim under Title VII based on race or gender is not as stringent as the burden of proving an Equal Pay Act violation based on gender.  The Eleventh Circuit has made it clear that what is required is not equal work but similar work.  See E.E.O.C. v. Reichhold Chem., Inc., 988 F.2d 1564, 1569-

14

1570 (11th Cir. 1993) (citing with approval <u>Miranda v. B & B Cash</u>
<u>Grocery Store</u>, 975 F.2d 1518 (11th Cir. 1992)).  Similar work is not
easy to define.  Nevertheless, the court believes that even under
the relaxed standard, McCurdy was not performing similar work to
his chosen comparators.

Chatham points out that the people to which McCurdy is
comparing himself worked as Assistant Loading Foremen on the night
shift.  McCurdy's job, however, was Assistant Receiving Foreman on
the day shift.  Chatham argues that the jobs are not similar
because much more is required of the Assistant Loading Foreman on
the night shift than of the Assistant Receiving Foreman on the day
shift.[7]

For example, while Receiving is responsible for unloading and
storing steel in the warehouse, Loading is responsible for
coordinating and supervising the loading of up to ten trucks and
insuring that those trucks are loaded safely, that the correct
materials are loaded in accordance with customers' orders, and that
materials are loaded in the order that they will be delivered to
the customers.  Thus, Loading has many more responsibilities than

---

[7] Apparently, plaintiff concedes that paying the night shift one dollar
more is regular practice and not discriminatory.  Thus, it is the more than
one dollar difference that plaintiff is complaining about.

Receiving.  Also, Chatham points out that the day shift has the
benefit of other supervisory or management employees to assist in
the performance of their duties when necessary and the night shift
has no such assistance.  Also, Chatham notes that the loading crew
on the night shift regularly works substantially longer hours than
the day shift.  In response, McCurdy points to basic duties that
both positions share.  However, he does not offer any evidence of
similar additional duties imposed on the day shift Receiving crew,
nor does he dispute the additional duties that the night shift
Loading crew performs.  Thus, from the evidence presented, it
appears to the court that the work is not "similar."

Even if the court found that the jobs were "similar" in that
they  do  share  some  of  the  same  duties,  the  additional
responsibilities of the night shift Loading Crew qualify as
legitimate non-discriminatory reasons for the pay disparity,
particularly in light of the fact that Title VII adopts the Equal
Pay Act defenses.  Thus, whether taken as evidence that the jobs
are  not  "similar"  or  as  evidence  of  a  legitimate,  non-
discriminatory reason, Chatham's evidence that the night shift's
Assistant Loading Foreman has additional responsibilities that an
Assistant  Receiving  Foreman  does  not  have  is  sufficient  to
demonstrate that the pay differential is not due to race and thus

16

to defeat McCurdy's claim for pay discrimination.

Finally, the court needs to address McCurdy's allegation that he was also paid less as Receiving Foreman that was his predecessor, who is white. Chatham argues that this particular pay claim was not alleged in the E.E.O.C. charge or in McCurdy's complaint. McCurdy counters that he was not required to file another charge with the E.E.O.C. because racial discrimination in pay for one position was clearly "related" to discrimination in pay for the other job. Normally, this issue comes up when a plaintiff has experienced discrimination, filed an E.E.O.C. charge, and then experiences related discrimination or retaliation **after** the charge has been filed. It is undisputed that in those cases, the plaintiff does not have to file another E.E.O.C. charge.

In this case, the court believes that pay discrimination in one job is "related" to pay discrimination in another. Thus, McCurdy was not required to file another charge with the E.E.O.C. However, the alleged pay disparity at issue began in January of 1999, **before** McCurdy filed his **complaint** in this court. In the complaint, he only refers to pay discrimination as an Assistant Foreman; he does not allege pay discrimination with regard to his position as Foreman. Because McCurdy did not ask leave to amend

17

his complaint to include this belated claim of pay discrimination, he may not raise it now.

### III.  Racially Hostile Work Environment

In order to establish a prima facie case for a racially hostile work environment, McCurdy must show:  (1) that he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment.  Henson v. City of Dundee, 682 F.2d 897, 903-905 (11th Cir. 1982).

As the Supreme Court has made clear

> [N]ot all workplace conduct that may be described as "harassment" affects a "term, condition, or privilege" of employment within the meaning of Title VII. . . . For [harassment] to be actionable, it must be sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment.

Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405 (1986)(citations omitted).

Factors to consider in determining whether the harassment is sufficiently severe or pervasive include the frequency of the conduct, the severity of the conduct, whether the conduct is threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's performance at work. See Edwards v. Wallace Community College, 49 F.3d 1517, 1521-22 (11th Cir.

18

1995)(citing <u>Harris v. Forklift Systems, Inc.</u>, 114 S.Ct. 367, 372
(1993)).

First, the court notes that most of the alleged racial
comments occurred in the 1980s, which diminishes their evidentiary
relevance.  However, even if the court were to agree with McCurdy
that **all** of the racial comments mentioned in his deposition are
relevant evidence, the court finds that they do not rise to the
level of a racially hostile work environment under the tests laid
out above.  For example, this is not a situation in which the
racial comments were so "commonplace, overt, denigrating, pervasive
and shocking" as to create an abusive working environment.  <u>See</u>,
<u>e.g.</u>, <u>E.E.O.C. v. Beverage Canners, Inc.</u>, 897 F.2d 1067, 1068 (11th
Cir. 1990).  The remark that all blacks are cursed is certainly a
racially derogatory comment and one that serves as circumstantial
evidence of discrimination in the promotion paradigm.  However,
even when that comment is combined with the other alleged racial
comments, they do not rise to the level of a hostile work
environment.  As the Eleventh Circuit has put it, "It is well
established that isolated and sporadic incidents of harassment are
insufficient to create a hostile working environment."  <u>Ellis v.
Wal-Mart Stores, Inc.</u>, 952 F.Supp. 1522, 1527 (M.D. Ala. 1996).
Therefore, Chatham's motion is due to be granted as to McCurdy's

19

hostile work environment claim.

### IV.  Retaliation

McCurdy filed his E.E.O.C. charge on January 9, 1998.  He
alleges that he has suffered retaliation for filing that charge.
A plaintiff alleging retaliation must establish a prima facie case
by demonstrating (1) that he engaged in statutorily protected
activity;  (2) that an adverse employment action occurred; and
(3) that there is a causal relation between the protected activity
and the adverse action.  See Taylor v. Runyon, 175 F.3d 861, 868
(11th Cir. 1999)(citing Goldsmith v. City of Atmore, 996 F.2d 1155,
1163 (11th Cir. 1993)).

In Chatham's brief in support of its motion for summary
judgment, it suggests that McCurdy is alleging four acts of
retaliation: (1) Chatham laid off some of his help to make him work
harder; (2) Ken Dooley is not helping him enough in the warehouse;
(3) David Blackwell is not helping him; and (4) He did not receive
a 6 month pay raise.  However, in McCurdy's brief in opposition to
Chatham's motion, he does not mention any retaliatory act other
than the fact that Clark did not hire an assistant foreman to help
him after he was promoted to Foreman.  As this court pointed out
supra with regard to McCurdy's promotion claims, any claims not
addressed in his brief (to the extent that they actually existed)

20

are deemed abandoned.

The claim that remains is McCurdy's allegation that Clark failed to hire an assistant foreman which resulted in an increased workload for him and was thus an adverse employment action. Assuming that this was an adverse employment action, and even assuming that McCurdy could show a causal connection, Chatham points out that in 1999, it had to lay off a total of 14 workers in order to cut costs and that these layoffs had nothing to do with the plaintiff's filing of his E.E.O.C. complaint. The indirect impact of this reduction in force was that McCurdy had more work than his predecessor. McCurdy has produced no evidence to cast doubt on Chatham's legitimate, nondiscriminatory reason for his increased workload. Therefore, McCurdy's claim for retaliation cannot survive summary judgment.

## Conclusion

A separate and appropriate order will be entered.

DONE this __18th__ day of April, 2000.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE